IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHNEIDER ELECTRIC USA, INC.

      Plaintiff,

v.   Case No.:

SEVEN MILE RESORT HOLDINGS LTD.
d/b/a THE WESTIN GRAND CAYMAN
SEVEN MILE BEACH RESORT & SPA

      Defendant.
_____/

## COMPLAINT

Plaintiff, Schneider Electric USA, INC. ("Schneider Electric" or "Plaintiff"), sues Defendant, Seven Mile Resort Holdings Ltd. d/b/a the Westin Grand Cayman Seven Mile Beach Resort & Spa ("the Westin" or "Defendant"), and alleges:

### INTRODUCTION

Schneider Electric seeks a judgment against the Westin to address the failure of the Westin to honor its obligations under the Hotel Agreements that governs their relationships, including the Westin's refusal to return Schneider Electric's deposit despite its termination of the Hotel Agreements by invoking the force majeure provision, without liability or further obligation, due to the curtailment of travel that was not within Schneider Electric's reasonable control. Schneider Electric brings counts for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) unjust enrichment, and (iv) conversion.

## PARTIES

1. Plaintiff, Schneider Electric USA, Inc., is a Delaware corporation with its principal place of business in Massachusetts.

2. Defendant, Seven Mile Resort Holdings Ltd. d/b/a the Westin Grand Cayman Seven Mile Beach Resort & Spa ("the Westin"), is a foreign entity with its principal place of business in Grand Cayman, Cayman Islands.

## JURISDICTION AND VENUE

3. The United States District Court has diversity jurisdiction over this matter pursuant 28 U.S.C. §1332, as the parties are residents of different states, and the amount in controversy exceeds $75,000.

4. The Westin, without limitation, operates, conducts, engages in, or carries on a business or business venture in this state, including having an office or agency in Florida.

5. The Westin has also engaged in substantial and not isolated activity within Florida, whether wholly interstate, intrastate, or otherwise.

6. The Westin is a Marriott brand hotel which utilizes Marriott for purposes of advertisement for the Grand Cayman hotel. The website www.marriott.com permits the general public to book rooms at the Westin hotel in Grand Cayman, and to otherwise obtain information regarding that hotel. Marriott also sends e-mails and other communications regarding its brand hotels (including the Westin) to guests and the general public.

7. The Westin is doing business in Florida via its agents and sales representatives, including Jay Marsella ("Marsella"), Westin's Vice President of Sales and Marketing; Corey Braithwaite ("Braithwaite"), a Senior Sales Manager; and Michael Zolcak, General Manager of Outdoor Operation; and potentially others.

8. Pursuant to the Hotel Agreement (defined below) at issue herein, the Westin operates a Florida based sales office. *See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 9.

9. Upon information and belief, the individuals named above live in Florida and conduct Westin business, either physically or virtually, out of the Florida-based sales office, including within this district.

10. The Hotel Agreement was executed on the Westin's behalf by Mark Beroza, a Senior Sales Manager at the time. Upon information and belief, Mr. Beroza lived in Florida at the time he executed the Hotel Agreement, and conducted business as part of the Westin's Florida-based sales office.

11. Braithwaite executed the Amendment (as defined below), and is designated as the contact for the Westin.

12. Upon information and belief, Braithwaite and Marsella were also involved in the decision to not return the deposit to Schneider Electric that is the subject of this lawsuit.

13. Via its sales office and sales activity within Florida (including the transaction at issue), the Westin has purposefully availed itself of the privilege of conducting activities in Florida, invoked the benefits and protections of Florida law (pursuant to the explicit

3

terms of the Hotel Agreement), and should reasonably be expected to be haled into Court in Florida as a result of such activities.

14. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1391(b) because Westin's agents and sales representatives are located in and engaging in business in the Middle District of Florida.

## FACTS

15. Schneider Electric USA, Inc. ("Schneider Electric") specializes in digital automation and energy management.

16. The Schneider Electric Presidents Club and BELT programs recognize and award its top employees who have met or exceeded certain sales goals, often with travel to destination locales across the globe.

17. In or about late 2019, Schneider Electric scheduled its Presidents Club and BELT programs to take place June 14-17, 2020 at The Westin Grand Cayman Seven Mile Beach Resort and Spa (the "Hotel") at 30620 Seven Mile Beach Grand Cayman, KY1-1200, Cayman Islands.

18. On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic, which caused unforeseen and economically devastating effects on businesses across countless sectors of the economy.

19. As a result of the pandemic, Schneider Electric rescheduled the Presidents Club and BELT programs to take place July 18-21, 2021 and then rescheduled again to take place on July 24-27, 2022.

20. Schneider Electric expected nearly 500 attendees for the Presidents Club and BELT programs who would be travelling from their home states/locations throughout the United States, Canada and Mexico, and air travel would be the only means by which the attendees could get to the Cayman Islands.

21. Schneider Electric hired Incentives Plus, Inc. ("Incentives Plus") to provide the necessary land and transportation arrangements in Grand Cayman for their travel program.

22. Incentives Plus, on behalf of Schneider Electric as a third-party beneficiary, entered into an Agreement dated February 22, 2021 (the "Hotel Agreement") and an Amendment thereto dated November 23, 2021 (the "Amendment") (collectively, the "Hotel Agreements") with the Westin to host its program. A copy of the Hotel Agreement and Amendment is attached as **Exhibit 1**.

23. Incentives Plus, acting as an agent of Schneider Electric, entered into the Hotel Agreements on behalf of Schneider Electric as a named third-party beneficiary.

24. Schneider Electric, through Incentives Plus, paid the Westin a deposit of $526,351.82 under the Hotel Agreements.

25. BCD Travel Services B.V. ("BCD") is Schneider Electric's travel management company that Schneider Electric uses for travel arrangements in dozens of countries. The contract with BCD requires Schneider Electric to use BCD for flight arrangements in those designated countries, which include North America. Schneider Electric's travel policy mandates that Schneider Electric book through BCD for security purposes. Schneider Electric has ISOS as their travel security company.

Booking outside of BCD removes that layer of security because ISOS would not receive travel data.

26. BCD could not book flights until after the winners for the event were announced, which occurred the first week of April 2022 and the deadline for the winners to register for the programs was ending on April 15.

27. On April 29, 2022, BCD notified Schneider Electric that it could not reasonably secure air travel to Grand Cayman, Cayman Islands for the nearly 500 expected attendees for Presidents Club and BELT programs (air travel being the only means by which the attendees could get to the Cayman Islands).

> Following [the] Covid-19 crisis, it is taking time for airlines to restore full capacity, in line with seats availability pre Covid. Therefore, we are faced with flights time adjustments, aircraft type change or even flight cancelations with little or no anticipation. This was the case on some of the AAA flights options that we originally secured for you based on your requirements.
>
> The original request for this event was to book 480 seats for passengers to travel from various US destinations to Grand Caymans, with direct or one stop flight and complying with Schneider Electric compliance and procurement policies. Given the actual airline capacity, there is no possibility for us to secure all seats based on your requirements. The only feasible option left would have been charter flights. But we understand this option is not feasible due to strict duty of care restrictions with limited number of Schneider passenger on the same flight.

*See* BCD Letter to Schneider Electric, attached as **Exhibit 2**.

28. These travel disruptions have forced airlines to cancel flights across the country, as they face an unprecedented demand, due to lack of crew, understaffing issues, reduction of schedules, technical issues and more.

29. The Hotel Agreement contains the following force majeure clause:

FORCE MAJUERE

The performance of this Agreement by either party, in part or in full, is subject to events or occurrences beyond their control such as, but not limited to, the following:… disease epidemics determined by advisory warnings from the Center for Disease Control (CDC), . . . **curtailment of transportation services** or facilities preventing attendees from attending, or a similar intervening cause beyond the control of either party making it illegal, impossible **or commercially impracticable** to hold the meeting at the HOTEL or to provide the services outlined in this agreement.

Notwithstanding the Cancellation Clause above, either party may terminate, suspend or partially perform its obligations under this agreement without liability or further obligation by written notice to the other party if such obligations are delayed, prevented or frustrated by any of the above events, or similar event or occurrence, to the extent such events or occurrences is/are beyond the reasonable control of the party whose reasonable performance is prevented, made impracticable, or partially curtailed.

*See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 7-8 (emphasis added).

30. Under the terms of the Hotel Agreement, Schneider Electric's performance is excused as a result of a force majeure event, which expressly included, "curtailment of transportation services … preventing attendees from attending … making it impossible or commercially impracticable to hold the [Event]." *See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 8.

31. The curtailment of travel discussed above was not within the reasonable control of Schneider Electric. Post-pandemic, airlines have seen unprecedented demands, while lacking the infrastructure to respond. Especially with pilot shortages, and other staffing issues the industry currently faces, carriers have increasingly

cancelled flights and reduced schedules as they continue to struggle with one of the strongest airline demands in history.

33. These circumstances drastically affected Schneider Electric's ability to book travel arrangements to the Cayman Islands for its attendees, making it at least commercially impracticable for Schneider Electric to hold its Presidents Club and BELT events at the Hotel.

33. Such circumstances triggered the force majeure clause of the Hotel Agreement and Schneider Electric's right to terminate the Hotel Agreement altogether "without liability or further obligation."

34. The Hotel Agreement has the following cancellation clause:

CANCELLATION CLAUSE

HOTEL must receive written notice for cancellation by Group. If a deposit is not received by the due dates, HOTEL may deem Group cancelled, in which case cancellation charges will be due by Group to HOTEL. Liquidated damages are payable to HOTEL within **thirty (30) days** of receipt of invoice.

In the event of a group cancellation occurring from time of signed contract to arrival, liquidated damages in the amount of ninety (90) percent of the "Anticipated Room Night Revenue and Banquet Food and Beverage Revenue Minimum" will be due, plus applicable taxes, service charges and resort charge. ($500,487.05). (emphasis added).

*See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 7 (emphasis supplied).

35. The Amendment provides the following update to the cancellation clause:

CANCELLATION CLAUSE

In the event of a group cancellation occurring from time of signed contracts to arrival, liquidated damages in the amount of ninety (90) percent of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes, service charges and resort charge. ($526,351.82).

*See* Exhibit 1, Amendment Dated November 23, 2021, Page 4.

36. The Amendment states that all of the terms of the original Hotel Agreement remain unmodified and in full force and effect, except as modified in the Amendment. The force majeure provision was not amended or modified. *See* Exhibit 1, Amendment Dated November 23, 2021, Page 4.

37. The Westin is only entitled to keep the deposit as liquidated damages in the event that Schneider Electric cancels the Hotel Agreement without justification and thereby breaches the contract.

38. Schneider Electric did not breach the Hotel Agreement by invoking the force majeure clause, as it was allowed to terminate the agreement without fault or liability.

39. Pursuant to the Hotel Agreements, on May 3, 2022, Incentives Plus (on behalf of Schneider Electric), provided timely written notice to the Westin of the force majeure occurrence preventing or otherwise making its reasonable performance impossible and/or commercially impracticable and requested a refund of Schneider Electric's $526,351.82 deposit. *See* Notice of Termination, attached as **Exhibit 3**.

9

40. To date, the Westin has not released these funds to Schneider Electric.

41. The Hotel Agreement is governed by Florida Law. *See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 9.

42. Schneider Electric and the Westin agreed that the prevailing party shall recover its attorneys' fees and costs incurred in the event of litigation arising from or associated with the Hotel Agreement. *See* Exhibit 1, Hotel Agreement Dated February 22, 2021, Page 9.

43. Schneider Electric has retained the services of its undersigned counsel and has become obligated to pay its reasonable attorney's fees.

## COUNT I (BREACH OF CONTRACT)

44. Schneider Electric hereby realleges and incorporates by reference Paragraphs 1 through 43 above as if the same were stated more fully herein.

45. Schneider Electric (via Incentives Plus) and the Westin entered into a legally valid, binding and enforceable agreement—the Hotel Agreement, as amended.

46. Pursuant to the Hotel Agreement, Schneider Electric terminated the agreement by invoking the force majeure provision due to curtailment of transportation services that made it impossible or commercially impracticable for Schneider Electric to book travel arrangements for nearly 500 guests for its Presidents Club and BELT program in the Cayman Islands.

47. The travel disruptions airlines face, and the resulting curtailment of transportation services to the Cayman Islands, is a circumstance beyond Schneider Electric's control.

48. Schneider Electric used reasonable efforts in an attempt to find alternative options for its program members, none of which were feasible or practical and which would compromise the safety of its attendees.

49. These travel disruptions, and resulting curtailment of transportation services to the Cayman Islands, made it commercially impracticable for BCD to book travel arrangements for Schneider Electric's Presidents Club and BELT program attendees.

50. Schneider Electric's performance of the Hotel Agreement is commercially impracticable for reasons beyond its reasonable control.

51. On or about May 3, 2022, Incentives Plus on behalf of Schneider Electric as a third-party beneficiary, notified the Westin of its intent to invoke the force majeure provision in the Hotel Agreement and also requested a refund of the deposit.

52. Schneider Electric was entitled to terminate the Hotel Agreement based on the force majeure provision.

53. Despite Schneider Electric's notice of termination of the Hotel Agreement, and request for a refund of the deposit, the Westin has not returned Schneider Electric's deposit, a breach of the Hotel Agreement.

54. Schneider Electric has been damaged by the Westin's failure and refusal to refund the deposit.

55. The Westin proximately caused injury and other damages to Schneider Electric.

56. The Westin is liable for those damages caused by its breach.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in an amount to be determined at trial, attorneys' fees and costs pursuant to the Hotel Agreement, prejudgment and post-judgment interest at the maximum lawful rate, and for all other relief to which Plaintiff is entitled at law or in equity.

**COUNT II**
**(BREACH OF THE COVENANT**
**OF GOOD FAITH AND FAIR DEALING)**

57. Schneider Electric hereby realleges and incorporates by reference Paragraphs 1-43 and 46-53 above as if the same were stated more fully herein.

58. Schneider Electric (via Incentives Plus) and the Westin entered into a legally valid, binding and enforceable agreement—the Hotel Agreement, as amended.

59. Implied in every contract is a covenant that the parties will act reasonably and will not act so as to prevent performance by the other party.

60. The Westin's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing.

61. Pursuant to the Hotel Agreement, Schneider Electric timely and properly terminated the agreement by invoking the force majeure provision due to curtailment of transportation services that made it impossible or commercially impracticable for Schneider Electric to book travel arrangements for nearly 500 guests for its Presidents Club and BELT program in the Cayman Islands.

62. Accordingly, the Westin was obligated to return Schneider Electric's deposit upon termination of the Hotel Agreement.

63. The Westin has failed and refused to return the deposit to Schneider Electric.

64. Such unfair and bad faith conduct by the Westin proximately caused injury and damages to Schneider Electric.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in an amount to be determined at trial, attorneys' fees and costs pursuant to the Hotel Agreement, prejudgment and post-judgment interest at the maximum lawful rate, and for all other relief to which Plaintiff is entitled at law or in equity.

## COUNT III (UNJUST ENRICHMENT)

65. Schneider Electric hereby realleges and incorporates by reference Paragraphs 1 through 43 above as if the same were stated more fully herein.

66. This is a cause of action for unjust enrichment in the alternative to Counts I and II above.

67. The goal in unjust enrichment cases is the prevention of injustice.

68. A person confers a benefit upon another if he or she gives to the other possession of or some other interest in, among other things, money, or in any way adds to other's security or advantage.

69. One who receives a benefit is enriched, and he or she would be unjustly enriched if its retention would be unjust.

70. A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

71. The Westin received $526,351.82 from Schneider Electric as a deposit for services that were never provided to Schneider Electric.

72. The Westin accepted and enjoyed the benefit of Schneider Electric's deposit.

73. The Westin failed to return the deposit notwithstanding Schneider Electric's timely and proper termination of the Hotel Agreement.

74. The Westin has thereby been unjustly enriched by its refusal to abide by its legal obligations to return the deposit to Schneider Electric.

75. As a result of the Westin's actions it has been unjustly enriched to the detriment of Schneider Electric in an amount to be determined at trial, including but not limited to its deposit of $526,351.82.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, prejudgment and post-judgment interest at the maximum lawful rate, and for all other relief to which Plaintiff is entitled at law or in equity.

## COUNT IV (CONVERSION)

76. Schneider Electric hereby realleges and incorporates by reference Paragraphs 1 through 43 above as if the same were stated more fully herein.

77. This is a cause of action for conversion in the alternative to Counts I and II above.

78. As described more fully above, despite demand for the Westin to return Schneider Electric's deposit, the Westin has failed and refused to return the deposit, despite Schneider Electric's timely and proper termination of the Hotel Agreement.

79. As a result, the Westin has exercised unauthorized dominion and control over the funds.

80. The Westin's conversion of Schneider Electric's deposit has permanently deprived Schneider Electric of its property.

81. Based on Westin's refusal to return the deposit despite Schneider Electric's demands, the Westin has directly caused injury and damages to Schneider Electric.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, prejudgment and post-judgment interest at the maximum lawful rate, and for all other relief to which Plaintiff is entitled at law or in equity.

### DEMAND FOR JURY TRIAL

Plaintiff respectfully requests trial by jury on all claims so triable.

Dated: February 2, 2023　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　SHUMAKER, LOOP & KENDRICK, LLP

　　　　　　　　　　　　　　　　　By: */s/ Seth P. Traub*
　　　　　　　　　　　　　　　　　　　Seth P. Traub
　　　　　　　　　　　　　　　　　　　Florida Bar No. 022088
　　　　　　　　　　　　　　　　　　　101 E. Kennedy Blvd., Suite 2800
　　　　　　　　　　　　　　　　　　　Tampa, Florida 33602
　　　　　　　　　　　　　　　　　　　Phone: (813) 229-7600
　　　　　　　　　　　　　　　　　　　straub@shumaker.com

HINCKLEY, ALLEN & SNYDER LLP

By: */s/ Mitchell R. Edwards*
    Gerald J. Petros
    (*pro hac* application to be filed)
    Mitchell R. Edwards
    (*pro hac* application to be filed)
    Seta Accaoui
    (*pro hac* application to be filed)
    100 Westminster Street, Suite 1500
    Providence, Rhode Island 02903
    Phone: (401) 274-2000
    gpetros@hinckleyallen.com
    medwards@hinckleyallen.com
    saccaoui@hinckleyallen.com

*Counsel for the Plaintiff*