UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SCHNEIDER ELECTRIC USA, INC.**,

    Plaintiff,

v.                                           Case No. 8:23-cv-225-WFJ-AEP

**SEVEN MILE RESORT HOLDINGS LTD** d/b/a **THE WESTIN GRAND CAYMAN SEVEN MILE BEACH RESORT & SPA**,

    Defendant.
_____/

## ORDER

Before the Court is Defendant Seven Mile Resort Holdings LTD d/b/a The Westin Grand Cayman Seven Mile Beach Resort & Spa's (the "Westin Hotel" or "Defendant") Motion for Summary Judgment. Dkt. 76. Plaintiff Schneider Electric USA, Inc. ("Schneider" or "Plaintiff") has responded in opposition, Dkt. 84, and the Westin Hotel has replied. Dkt. 92. Upon due consideration, the Court denies Defendant's motion for summary judgment.

## FACTUAL BACKGROUND

In December 2019, Plaintiff Schneider made preparations to hold its annual Presidents Club and BELT trips (together, the "Program events") for its employees. Dkt. 1 ¶¶ 16-17; Dkt. 84-62 ¶ 5. Incentives Plus, Inc. ("Incentives") is a corporate

travel agency that handled all aspects of Schneider's corporate Program events, including reserving the hotel and other third-party contracts. Dkt. 79 ¶ 3. Schneider and Incentives signed a "Letter of Agreement and its amendments" ("LOA") that outlined Incentives' responsibilities, including "provid[ing] the necessary land and transportation arrangements for" the Program events. Dkt.79-4 at SE_0000001; Dkt. 84-62 ¶ 18. On behalf of Schneider, Incentives signed a contract with Defendant Westin Hotel on February 22, 2021, which was subsequently amended on November 23, 2021 (the "Hotel Agreement"). Dkt. 1-1; Dkt. 79 ¶ 5; Dkt. 84-62 ¶ 5. The cancellation of the Hotel Agreement is the subject of this dispute.

## I.   The Hotel Agreement

The Hotel Agreement essentially provided that the Westin Hotel would host Schneider's Program events at certain group rates. *See* Dkt. 1-1 at 2, 7–8, 11. Importantly, the Hotel Agreement also contained force majeure, cancellation, and hold harmless clauses. *See id*. The Agreement's force majeure clause, which was unaltered by the November 2021 amendment, provided the following:

> The performance of this Agreement by either party, in part or in full, is subject to events or occurrences beyond their control such as, but not limited to, the following: . . . disease epidemics determined by advisory warnings from the Center for Disease Control (CDC), . . . curtailment of transportation services or facilities preventing attendees from attending, or a similar intervening cause beyond the control of either party making it illegal, impossible or commercially impracticable to hold the meeting at the HOTEL or to provide the services outlined in this agreement.

> Notwithstanding the Cancellation Clause above, either party may terminate, suspend or partially perform its obligations under this agreement without liability or further obligation by written notice to the other party if such obligations are delayed, prevented or frustrated by any of the above events, or similar event or occurrence, to the extent such events or occurrences is/are beyond the reasonable control of the party whose reasonable performance is prevented, made impracticable, or partially curtailed.

*Id.* at 8–9. The Hotel Agreement's cancellation clause, which the November 2021 Amendment altered, provided that:

> In the event of a group cancellation occurring from time of signed contracts to arrival, liquidated damages in the amount of ninety (90) percent of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes, service charges and resort charge. ($526,351.82).

*Id.* at 16.[1] Pursuant to the Hotel Agreement, Incentives ultimately paid the Westin Hotel $526,351.82 as a deposit on behalf of Schneider. Dkt. 79 ¶ 15; Dkt. 84-62 ¶ 15. The Hotel Agreement's hold harmless clause, unaltered by the November 2021 amendment, states in relevant part that:

---

[1] The Hotel Agreement's original cancellation clause provided that:

> HOTEL must receive written notice for cancellation by Group. If a deposit is not received by the due dates, HOTEL may deem Group cancelled, in which case cancellation charges will be due by Group to HOTEL. Liquidated damages are payable to HOTEL within thirty (30) days of receipt of invoice.
>
> In the event of a group cancellation occurring from time of signed contract to arrival, liquidated damages in the amount of ninety (90) percent of the "Anticipated Room Night Revenue and Banquet Food and Beverage Revenue Minimum" will be due, plus applicable taxes, service charges and resort charge. ($500,487.05).

Dkt. 1-1 at 8.

3

> The Parties hereby designate Schneider Electric USA, Inc., as third-party beneficiary of this Agreement, which includes Schneider Electric, USA, Inc's right to enforce this hold harmless provision.

*Id.* at 11.

## II. BCD Travel USA LLC

While Schneider used Incentives to make the hotel arrangements, Schneider also used BCD Travel USA LLC ("BCD") as its travel management company, responsible for booking flights for the Program event attendees. Dkt. 84-62 ¶ 28. On November 16, 2021, BCD informed Schneider that it had found 546 airline seats for anticipated attendees. Dkt. 79 ¶ 31. Schneider directed BCD to reserve 296 airline seats with American Airlines for the 486 anticipated attendees. *Id.* ¶¶ 33, 35. Schneider did not pay any deposits for the 296-seat reservations held by BCD. *Id.* ¶ 50. On April 14, 2022, BCD informed Schneider that only 168 seats remained on the previously reserved flights. *Id.* ¶ 45; Dkt. 84-62 ¶ 45. Based on BCD's recommendation, Plaintiff ultimately told BCD to cancel any American Airlines seats it still held for attendees on April 22, 2022. Dkt. 79 ¶ 46, 64; Dkt. 79 ¶ 46, 64.

## III. Cancellation of the Hotel Agreement

On May 3, 2022, Incentives, acting on Schneider's direction, notified the Westin Hotel of an alleged force majeure occurrence (i.e., the COVID-19 pandemic) and requested the deposit back. Dkt. 1-3 at 2; Dkt. 1 ¶ 39; Dkt. 79 ¶ 72. The Westin Hotel declined a refund and applied the deposit to its cancellation fee. Dkt. 79 ¶ 73.

As a result, on February 2, 2023, Schneider brought the instant Complaint alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment in the alternative (Count III), and conversion in the alternative (Count IV). Dkt. 1 at 10–15.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes

summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e), (c). The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

Based on the review of the filings, the Court denies Defendant's motion for summary judgment. As discussed below, Plaintiff has standing to bring its alleged claims as an intended third-party beneficiary, and there are genuine disputes of material fact about whether Plaintiff could invoke the force majeure due to the COVID-19 pandemic.

Defendant asks this Court to grant its motion for summary judgment based on two arguments. "First, Schneider is not a principal party to the contract and therefore cannot prevail on the claims it asserts." Dkt. 76 at 2. Second, even if Plaintiff has standing to bring its claims, the termination of the Hotel Agreement constitutes an anticipatory breach because: "(a) there was no curtailment of travel services; (b) beyond Schneider's control; (c) preventing attendees from attending; and (d) even if transportation was curtailed, it still was not 'illegal, impossible or commercially

impracticable'" to hold the Program events at the hotel. *Id.* The Court will address each argument in turn.

## I.     Standing as an Intended Third-Party Beneficiary

There is no dispute that the Hotel Agreement is a binding and enforceable contract. *Id.*; Dkt. 84-62 ¶ 5. Defendant does, however, dispute that Schneider is a "principal party" to the contract and argues Plaintiff lacks standing to bring any of the counts asserted in the Complaint. Dkt. 76 at 2–3. The Court finds the Hotel Agreement's explicit language designating Schneider as an intended third-party beneficiary grants Plaintiff standing to bring its claims.[2]

"The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract." *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) (citation omitted). Third-party beneficiaries of a contract may sue for its enforcement under Florida law in those limited situations "where the contract provisions clearly establish the parties' intent to create a right primarily and directly benefiting the third part[ies]." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 396 (Fla. 1st DCA 1992) (citing *Legare v. Music & Worth Constr. Co., Inc.*, 486 So. 2d 1359, 1362 (Fla. 1st DCA 1986)). These third-party beneficiaries are referred to as intended third-party beneficiaries. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964,

---

[2] The parties agree Florida substantive law governs this case. Dkt. 1 ¶ 41; Dkt. 23 ¶ 41.

981 (11th Cir. 2005) (citing *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968)).

As such, a party seeking to enforce a contract as a third-party beneficiary must allege four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Mendez*, 203 So. 3d at 148 (citing *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 194–95 (Fla. 2006)). Of importance here, to satisfy the second element, there "must be [a] show[ing] that both contracting parties intended to benefit the third party." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994).

There is no dispute that Plaintiff is an intended third-party beneficiary to the Hotel Agreement. Defendant concedes Schneider is explicitly identified as a third-party beneficiary in the contract. Dkt. 23 ¶ 30; Dkt. 76 at 13; Dkt. 79 ¶ 12; Dkt. 1-1 at 11. Yet, despite this undisputed fact, Defendant contends "Counts I-IV of Schneider's complaint each rest on the allegation that Incentives [] was Schneider's agent and seek the return of deposits Incentives Plus paid the Hotel – claims which only belong to Incentives Plus." Dkt. 76 at 14. The Court disagrees.

Defendant incorrectly asserts only Incentives can assert the contractual claims made in the Complaint. *Id.* at 18. But, as the Plaintiff's Complaint makes clear,

8

Schneider alleges a breach of a third party-beneficiary contract. *See* Dkt. 1 ¶¶ 22, 23, 51 (asserting a breach of contract claim as a third-party beneficiary to the Hotel Agreement after the Westin Hotel refused to return the deposit). Florida law allows intended third-party beneficiaries to sue to enforce the contract "even though the person is not party to the contract." *Mendez*, 203 So. 3d at 148; *Vencor Hosps. v. Blue Cross Blue Shield of Rhode Island*, 169 F.3d 677, 680 (11th Cir. 1999) ("A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party."). While there may be some dispute about whether Schneider and Incentives were in an agency relationship based on the LOA (*see* Dkt. 76 at 16–17), the standing calculus remains unchanged. There is no genuine dispute that when Incentives and the Westin Hotel signed the Hotel Agreement, the signatories had the clear and manifest intent to make Schneider the intended third-party beneficiary of the agreement. *See* Dkt. 1-1 at 11 ("The Parties hereby designate Schneider Electric USA, Inc., as third-party beneficiary of this Agreement. . .").

As a third-party beneficiary, Plaintiff has the same right of action as the contracting party (i.e., Incentives), regardless of whether the LOA formed an agency relationship between Schneider and Incentives. *See Crabtree v. Aetna Cas. & Sur. Co.*, 438 So. 2d 102, 105 (Fla. 1st DCA 1983) (noting a third-party beneficiary's right of action can only rise as high as "the rights of the contracting party through

whom he claims"); *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1441 (11th Cir. 1996) (same). Thus, a return of the deposit that Incentives paid is a right Schneider also possess as a third-party beneficiary to the Hotel Agreement.

Moreover, any dispute about whether the LOA created an agency relationship between Schneider and Incentives (and therefore limits Schneider's rights to sue as a third-party beneficiary) is properly left to a jury. Florida courts have held that when "the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of an agency relationship are generally questions of fact." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003); *see also Goldschmidt v. Holman*, 571 So. 2d 422, 424 (Fla. 1990) ("[T]he existence of an agency relationship is normally one for the trier of fact to determine, [except where] there [is] no evidentiary question . . . for the [factfinder] to resolve." (citation omitted)).

Here, the record contains conflicting evidence on the question of agency. Westin Hotel argues language in the LOA disclaims any agency relationship between Schneider and Incentives. Dkt. 76 at 16 (quoting Dkt. 79-4 at SE_0000006 ("[N]othing in this Agreement will be deemed or construed to create an employe-employer, joint venture, partnership or agency relationship between Schneider Electric USA, Inc. and Incentives Plus, Inc.")). Schneider, however, points to a different provision in the LOA that states, "Incentives Plus, Inc. will act as your

agent" when booking a hotel for the Program events, and notes the LOA makes Schneider responsible for "pay[ing] any and all such costs and fees incurred" with the Hotel Agreement. Dkt. 84 at 7 (citing Dkt. 79-4 at SE_0000005, SE_0000031). Because the LOA's language on whether there is an agency relationship is susceptible to multiple interpretations, there is a genuine dispute of material fact that only a jury can decide. Accordingly, Schneider, as the intended third-party beneficiary of the Hotel Agreement, has standing to bring its claims in Counts I-IV.

## II.  Force Majeure Clause

Next, Westin Hotel argues that even if Schneider has standing to bring its claim in Count I (breach of contract),[3] "[t]here is no evidence that any occurrence, as enumerated in the force majeure provision, triggered the clause." Dkt. 76 at 20. The Court disagrees and finds Schneider has shown there are material factual disputes about whether Schneider properly invoked the force majeure clause.

Under Florida law, a "force majeure clause is a contractual provision that excuses a party's non-performance when extraordinary events that are beyond that party's control prevent the party from performing under the contract." *Vereit Real Est., L.P. v. Fitness Int'l, LLC*, 365 So. 3d 442, 446 (Fla. 3d DCA 2023) (citation omitted). "The plain language of the force majeure clause itself defines when, and

---

[3] Westin Hotel has provided no facts or analysis supporting summary judgment for Counts II, III, and IV. *See generally* Dkts. 76 & 92.

under what circumstances, the contracting parties are excused from performing under the agreement." *Id.* (citation omitted). "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *KRG Oldsmar Project Co., LLC v. CWI, Inc.*, 358 So. 3d 464, 468 (Fla. 2d DCA 2023) (quotation and citation omitted).

> Here, the force majeure provision explicitly states,
>
> The performance of this Agreement by either party, in part or in full, is subject to events or occurrences beyond their control such as, but not limited to, the following: . . . disease epidemics determined by advisory warnings from the Center for Disease Control (CDC), . . . curtailment of transportation services or facilities preventing attendees from attending, or a similar intervening cause beyond the control of either party making it illegal, impossible or commercially impracticable to hold the meeting at the HOTEL . . .

Dkt. 1-1 at 8–9. Neither party is disputing the existence or language within the clause; rather, Westin Hotel argues none of the triggering events in the clause ever occurred. Westin Hotel asserts there was no force majeure involving "curtailment of transportation services" due to the COVID-19 pandemic. Westin Hotel states that any transportation issues were Schneider's own fault since it refused to hold airline seats by making the required deposits, failed to reserve enough seats for all 480 anticipated attendees, and declined to use charter airline flights to reach the Cayman Islands. Dkt. 76 at 21 (citing Dkt. 79 ¶¶ 32, 33, 48, 49, 50, 57, 61, 63; Dkt. 79-7 at BCD000087).

12

Schneider, however, highlights different parts of the record that show the pandemic led to a worldwide decrease in international airlift capacity and that the Westin Hotel was aware of travel problems guests were having with their flights into the Cayman Islands. Dkt. 84 at 10 (citing Dkt. 84-62 ¶¶ 111-21); Dkt. 94-1 at 54:22-60:13 (deposition of Westin Hotel General Manager James Mauer discussing how 37 group that were scheduled in 2022 were rescheduled to later dates with at least 12 of those groups invoking the force majeure clauses of their contracts). Whether COVID-19 led to a curtailment of transportation services or whether "Schneider interfered with its own performance" (Dkt. 76 at 23) are all factual disputes that only a jury can decide.

The same analysis applies to whether the force majeure event made performance "commercially impracticable." The Westin Hotel asserts that any curtailment of transportation services outside of Schneider's control did not make holding the Program events illegal, impossible, or commercially impracticable. Dkt. 76 at 23–24. In support, Westin Hotel cites several parts of the record showing the hotel was hosting transient guests and groups at the time of Schneider's cancellation; Incentives provided Schneider with a flight list showing there were sufficient seats for all attendees; BCD told Schneider that charter flights were available; and BCD

sent Schneider a list of over a hundred flights that objectively could accommodate attendees. Dkt. 76 at 24 (citing Dkt. 79 ¶¶ 49, 74, 81-85, 89).[4]

On the other hand, Schneider points to directly contradictory evidence where Incentives allegedly informed Schneider "that it agreed with BCD's determination that it would not be possible to get all 480 winners to the Program [events] due to lack of flight availability." Dkt. 84 at 11 (citing Dkt. 84-62 ¶ 102); Dkt. 84-10 at SE_0010229; Dkt. 84-33 at SE_0005367. As for whether Schneider should have followed BCD's suggestion to use chartered flights, Plaintiff argues a jury should decide whether this option was commercially impractical because the "charters would have been a 400-700% increase in flight cost per Program attendee." Dkt. 84 at 15 (citing Dkt. 84-62 ¶ 48 ("[C]harters would have cost $3,000-4,000 per person – as compared against $500-600 per person for scheduled flights. The additional cost would have increased travel costs per Program attendee between 400% and 700%.")).

At bottom, a jury will need to determine whether force majeure exists due to a curtailment of transportation services and whether that curtailment made it commercially impracticable to hold the Program events at the hotel. Even if the Court found charter flights could have brought all attendees to the Cayman Islands,

---

[4] Plaintiff disputes these factual assertions and argues most of Defendant's documents are inadmissible hearsay that cannot be considered on a motion for summary judgment. Dkt. 84-62 ¶¶ 82-85; *see Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

a jury would still need to decide whether the cost of those private flights made such a decision commercially impracticable. Thus, whether Schneider properly invoked the force majeure clause involves several genuine disputes of material fact that preclude summary judgment in Westin Hotel's favor.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the Westin Hotel's Motion for Summary Judgment, Dkt. 76, is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, on November 19, 2024.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record